CARLTON, Justice
(concurring specially).
While I concur in the majority opinion, I think that a specific response should be directed to the dissent. It is suggested therein that the Commission has "employed a great deal of camouflage” in limiting the certificate to be granted to the applicant, Camp Lumber Company. It is also suggested that protesting certificate holders bear the burden of proof for showing why an application should not be granted. Both suggestions are open to question.
The application hearing featured testimony from three distinct quarters: the applicant; witnesses supporting the application ; witnesses protesting against the grant of the application. Substantial portions of the applicant’s testimony concerned services it had been rendering without benefit of a Public Service Commission certificate over a long number of years throughout large portions of Florida. Under Southern Armored Service, Inc. v. Mason, 167 So.2d 848 (Fla.1965), this testimony was inadmissible. Testimony by witnesses speaking in favor of the application was also inadmissible to the extent that it related to previous unauthorized service. However, these witnesses also offered general testimony, unrelated to the previous services of the applicant, about the transportation needs of shippers and receivers of rock, sands and aggregate road materials located in Alachua, Bradford and Putnam counties. On the basis of this testimony, the Commission could conclude that the need for an additional authorized carrier for these counties was adequately demonstrated.
The remaining testimony, that given by the protestants, indicated that they were ready, willing and able to supply the needs of the counties previously mentioned. The dissent states that, with one exception, these protestants did not demonstrate that an additional grant of authority would impair their financial security; therefore, the limitations imposed on the application were not supported by the evidence. If this view is seriously held, it is held without an appreciation for Fla.Stat. § 323.03(3) (c), F.S.A., which provides:
“(c) When application is made by a motor carrier for a certificate to operate as a common carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to *651 provide service and facilities which may reasonably be required by the commission.”
The testimony of the witnesses supporting the application revealed that they were generally satisfied with the service of the existing carriers, or that they had not acquainted themselves with the carriers avails able.[1] The failure to provide service required by the above statute was not demonstrated, except for the counties named previously. Impairment of financial security of existing carriers is not the deter-,.i'native factor in considering the applica-ion under these facts.
As a final note, I find it necessary to comment about the Commission’s grant of authority as to Clay County. The transcript does not reveal any testimony about service in this area. Because it borders on Alachua, Putnam and Bradford, however, it can be accepted as part of the community of interest involved. The four counties together form an integrated geographic unit. See South Florida Freightways, Inc. v. Mayo, 238 So.2d 70 (Fla.1970).

. The dissent suggests that the excerpted testimony of Mr. Anderson was typical of the calibre of evidence solicited from all the supporters. This is not entirely accurate. Mr. Anderson indicated that he does 80% to 90% of his own hauling. He also said that he was not acquainted with all of the potential carriers in his area. Mr. Harry Edwards said he had no complaints with any service. Mr. Fiori said that he was not familiar with all of the available carriers, and that the carriers that he had used had provided him with reasonable service. Mr. Denny said that he had been getting reasonably adequate service, and that his main complaint was with railroad service. Although these gentlemen were generally satisfied, it nonetheless appears obvious that deficiencies in service existed within the counties named because all said that it would be better to have more trucks available.